# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE


ROBERT M. SIMPKINS,           )
     Plaintiff,                    )
                                       )
v.                                   )       No. 3:11-CV-595
                                         )       Phillips/Guyton
SUNTRUST MORTGAGE, INC., and    )
FEDERAL NATIONAL MORTGAGE      )
ASSOCIATION, INC.,               )
     Defendants.                 )


## <u>MEMORANDUM OPINION</u>


This action arises from the foreclosure of plaintiff's home by defendants, and is before the court on the motion to dismiss the complaint filed by defendants. As part of his response to defendant's motion to dismiss, plaintiff has moved for leave to amend his complaint under Federal Rule of Civil Procedure 15(a).


When there are pending before the court both a dispositive motion and a motion to amend the complaint, the court must first address the motion to amend complaint. *See Ellison v. Ford Motor Co.,* 847 F.2d 297, 300 (6th Cir. 1988). Under Rule 15(a), judges are directed to grant leave to amend pleadings freely "when justice so requires." The determination of whether the circumstances of a case are such that justice would require the allowance of an amendment is left to the sound discretion of the court. *Hayden v. Ford Motor Co.,* 497 F.2d 1292, 1294 (6th Cir. 1974). It appears that justice

requires that plaintiff be allowed to amend his complaint to state his claims with more specificity than was done in his original complaint filed in state court. Accordingly, plaintiff's motion to amend his complaint [Doc. 14] is **GRANTED.** The court will next address defendants' motion to dismiss the complaint, as amended.

## I. Allegations in the Amended Complaint

Plaintiff Simpkins alleges that on April 4, 2007, he borrowed money in the form of a first mortgage on his home located at 6429 Simpson Road, Loudon, Tennessee, in the amount of $117,450.00. Simpkins secured the loan by a Deed of Trust dated April 4, 2007. He fell behind in his mortgage payments and was contacted by SunTrust, which initiated collection proceedings on the property.

SunTrust referred the delinquent loan to its foreclosure attorneys, Johnson and Freeman on March 23, 2010. The first foreclosure sale was scheduled for May 6, 2010. Simpkins informed SunTrust's Bankruptcy Department on May 4, 2010, that he had filed a Chapter 13 bankruptcy and the foreclosure file was closed by SunTrust. Simpkins' bankruptcy was dismissed on November 17, 2010.

Simpkins attempted to file a Chapter 13 bankruptcy again on May 5, 2011, and again the Chapter 13 bankruptcy was dismissed. Simpkins was notified by SunTrust via letter dated July 22, 2011, that his account had been referred to an attorney for SunTrust to commence foreclosure proceedings. The letter directed Simpkins to contact SunTrust's Loss Mitigation Department and noted that an agreement to keep him from

2

losing his home could be struck between the parties.  Simpkins contacted the SunTrust Loss Mitigation Department and spoke with a SunTrust representative, requesting the amount required to bring his loan current and keep the foreclosure from occurring.  On August 22, 2011, Simpkins was informed by a SunTrust Loss Mitigation department representative (whose name was Mike), that a deposit of $13,745.72 would be required to bring his loan current and halt the foreclosure proceedings.  In addition, the SunTrust representative stated that Simpkins would also have to pay attorney fees associated with the process.  Simpkins' fiancée, Terri Green, contacted the SunTrust representative to verify the amount needed to bring the loan current and cancel the foreclosure proceedings. Green inquired as to the amount of attorney fees and was directed to contact the attorney for SunTrust to obtain the figure.

Simpkins and his fiancée contacted SunTrust's attorneys, Johnson and Freedman at Nationwide Trustee Services Inc. on August 22, 2011, and spoke with Ashley Sengaly requesting the amount of the attorney fees owed on Simpkins' loan.  Sengaly told both Simpkins and Green that she did not have that information and it had not been received from SunTrust.  On August 23, 2011, Simpkins and Green again contacted Sengaly to request the information regarding the attorney fees, and were informed that four separate emails were sent to SunTrust (two on August 22, 2011 and two on August 23, 2011), requesting the information, but no information was provided.  Simpkins inquired of Sengaly as to the dilemma concerning the attorney fees, and was informed by Sengaly that these would be added to the end of the loan.

3

Simpkins made a payment on August 23, 2011 at SunTrust in the amount of $13,745.72. Part was paid in cash ($45.72) and the remainder was paid via cashier's check in the amount of $13,700.00. This figure was the amount quoted to Simpkins by the SunTrust Loss Mitigation Department, in order to bring the loan current and stop the foreclosure.

A foreclosure sale was held on August 25, 2011 by Nationwide Trustee Services in Loudon, Tennessee, at which time the property was sold to SunTrust Bank for the sum of $103,617.00, and SunTrust assigned its interest in the property to Fannie Mae.

Simpkins contacted Stephanie, agent for the Fannie Mae Resolve Center and was informed that the foreclosure sale took place because SunTrust did not forward the funds required to stop the foreclosure until August 26, 2011, and that the funds had been returned to Simpkins.

After the foreclosure sale, SunTrust contacted Simpkins by letter, dated September 19, 2011, advising him that his account had been referred to their attorney for foreclosure, and that SunTrust would not accept anything less than the total amount due to bring the loan current. SunTrust enclosed the cashier's check presented by Simpkins, and advised him that he could receive counseling from a HUD-approved counseling agency and HOPE, a nonprofit organization dedicated to helping "save your home."

4

Fannie Mae filed a detainer action against Simpkins on October 21, 2011, which was heard in the General Sessions Court of Loudon County on November 17, 2011, seeking possession of Simpkins' home. A temporary restraining order was entered by the state court restraining defendants from moving forward with eviction of plaintiff from the property on December 9, 2011.

Simpkins filed his original complaint in the Chancery Court for Loudon County, Tennessee on November 14, 2011. Defendants removed the action to the district court on December 16, 2011. Simpkins' amended complaint alleges claims for breach of contract, breach of oral agreement, breach of the implied covenant of good faith and fair dealing, fraud, and violation of the Tennessee Consumer Protection Act. The amended complaint asks for the following relief: (1) a restraining order to enjoin defendants from moving forward with the eviction of plaintiff pending a final hearing in this cause; (2) judgment against defendants in the sum of $100,000.00 for punitive damages, and costs, including attorney fees; and (3) that the court set aside the foreclosure which took place on August 25, 2011, or in the alternative, that plaintiff be awarded damages in an amount to be determined by the court.

Defendants have moved to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) on the following grounds: (1) Tennessee law does not recognize an independent tort of bad faith; (2) the complaint does not sufficiently state a claim for breach of the implied covenant of good faith and fair dealing; (3) plaintiff failed to timely cure his default under the Note and Deed of Trust; (4) plaintiff cannot recover because he

5

tendered his untimely payment to the wrong entity at the wrong place of payment; and (5) the complaint fails to state a claim for misrepresentation.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted. The sufficiency of the plaintiffs' complaint must be assessed in light of the requirements of Federal Rule of Civil Procedure 8 and the Supreme Court's heightening of those requirements under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 570 (2008) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under Rule 8, a pleading "must contain . . . a short and plain statement of the grounds for the court's jurisdiction, [and] . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." F.R.C.P. 8(a)(1)-(2).

When considering a motion to dismiss, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While the court must accept "as true all non-conclusory allegations in the complaint, it does not have to accept unsupported legal conclusions." *Delay v. Rosenthal Collins Group, LLC,* 585 F.3d 1003, 1005 (6th Cir. 2009). In addition, under the heightened pleading requirements adopted by the Supreme Court, the district court must determine whether the complaint pleads a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 679. To be considered plausible, a claim must be more than merely conceivable and the factual allegations "must be enough to raise a right to relief above the speculative level."

*Little v. Nationwide Children's Hosp., Inc.,* 2009 WL 4261215, *3 (S.D.Ohio Nov. 25, 2009) (*quoting Twombly,* 550 U.S. at 555*).*

Even stricter pleading requirements apply to plaintiffs' fraud claim. Rule 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." F.R.C.P. 9(b). To satisfy this requirement, "a plaintiff must, at a minimum, allege the time, place and content of the alleged misrepresentation upon which he relied; the fraudulent intent of the defendant; and the injury resulting from the fraud." *Calipari v. Powertel*, 231 F.Supp.2d 734, 735-36 (W.D. Tenn. 2002).

### III.  Claim for "Bad Faith"

Defendants assert that Simpkins' bad faith claim must be dismissed because Tennessee law does not recognize an independent tort of bad faith, citing *Solomon v, First American Nat'l Bank of Nashville*, 774 S.W.2d 935, 945 (Tenn.Ct.App. 1989) ("good faith or the lack of it may be an element or circumstance of recognized torts, or breaches of contracts, but it does not appear that good faith, or the lack of it is, standing alone, an actionable tort"); *see also Federated Rural Elec. Ins. Exchange v. Hill*, 2007 WL 907717 at *7 (Tenn.Ct.App. 2007) ("there is no valid tort of bad faith . . ."); *Oak Ridge Precision Industries, Inc. v. First Tennessee Bank Nat'l Ass'n*, 835 S.W.2d 25, 29-30  (Tenn.Ct.App. 1992) ("to the extent that plaintiff alleges an independent tort, it fails to state a claim on which relief can be granted . . .").

7

In his response, Simpkins acknowledges that the case law does not support an independent tort of bad faith. Accordingly, to the extent that the amended complaint attempts to state a claim for "bad faith", that claim is **DISMISSED.**

### IV. Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Simpkins asserts that defendants breached the implied covenant of good faith and fair dealing and that this is part of defendant's breach of contract.

In Tennessee, "parties to a contract owe each other a duty of good faith and fair dealing as it pertains to the performance of a contract." *Barnes v. Robinson Co. v. OneSource Facility Servs. Inc.*, 195 S.W.3d 637, 642 (Tenn.Ct.App. 2006). The implied obligation of good faith and fair dealing does not, however, create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement. *Id.* A claim for breach of the implied covenant of good faith and fair dealing is not an independent basis for relief, but rather "may be an element or circumstance of recognized torts, or breaches of contracts." *Upperline Equip. Co. v. J&M, Inc.,* 724 F.Supp.2d 883, 892 (E.D.Tenn. 2009) (quoting *Solomon v. First am. Nat'l Bank of Nashville*, 774 S.W.2d 935, 945 (Tenn.Ct.App. 1989)); *see also Wyndham Vacation Resorts,* 2009 WL 18884058 at *5 (E.D.Tenn. June 30, 2009) (a claim for breach of the implied covenant "is just a part and parcel of the breach of contract claim").

In his response, Simpkins acknowledges that a claim for breach of the implied

covenant of good faith and fair dealing is not a "stand-alone" claim. Rather, it is part of his

overall breach of contract claim. Accordingly, to the extent that the amended complaint

attempts to state an independent claim for breach of the implied covenant of good faith and

fair dealing, that claim is **DISMISSED.**


## V.  Breach of Contract

The Deed of Trust executed by Simpkins provides:

> [if] Borrower meets certain conditions, Borrower shall have the
> right to have enforcement of this security instrument
> discontinued at any time prior to the earliest of: (a) five days
> before sale of the property pursuant to any power of sale
> contained in this security instrument . . . . Those conditions are
> that Borrower: (a) pays Lender all sums which then would be
> due under this Security Instrument and the Note as if no
> acceleration had occurred . . . (c) pays all expenses incurred
> in enforcing this Security Instrument, including, but not limited
> to, reasonable attorneys' fees, property inspection and
> valuation fees, and other fees incurred for the purpose of
> protecting Lender's interest in the property and rights under the
> Security Instrument.

Pursuant to the terms of the Deed of Trust, in order to stop the foreclosure proceedings,

Simpkins was required to tender the full amount due under the Deed of Trust and Note as

if no acceleration had occurred at least five days before the scheduled foreclosure. In his

amended complaint, Simpkins states that he "made a payment on August 23, 2011 at

Suntrust Bank in the amount of $13,745.72." Assuming that Simpkins tendered all

outstanding amounts owed, the tender payment was untimely under the Deed of Trust, as

it was not tendered five days prior the date set for the foreclosure sale on August 25, 2011.

In addition, defendants argue that Simpkins tendered his payment to the wrong entity at the wrong place of payment. Defendants state that a note, such as the one at issue in this case, is a negotiable instrument governed by the Tennessee Uniform Commercial Code (UCC). Tenn. Code Ann. §47-3-104; *see also In re: Frost*, 1 Bankr. 313(Bankr.M.D.Tenn. 1979). A note is payable to the person or entity identified in the instrument. *See* Tenn. Code Ann. § 47-3-110. In this case, Simpkins attempted to tender payment to SunTrust Bank not SunTrust Mortgage, Inc. as required by the Note and Deed of Trust. Moreover, the UCC provides that "an instrument is payable at the place of payment stated in the instrument." Tenn. Code Ann. § 47-3-111. In regard to the place of payment, the UCC also states:

> A branch or separate office of a bank is a separate bank for the purpose of computing the time within which and determining the place at or to which action may be taken or notice or orders must be given under this chapter and under Chapter 3 of this title.

Tenn. Code Ann. § 47-4-107.

In *U.S.Bank Nat'l Assoc. v. Whitney* 81 P.3d 135 (Wash.Ct.App. 2003), a borrowers' payment at a non-designated bank branch did not constitute effective tender of payment. In that case, the borrowers executed a promissory note which provided that "the place of payment . . . is the Bank of Yakima, or at such other places . . . as the holder hereof may from time to time designate." *Id*. at 140. Despite the place of payment being identified in the note, the borrower tendered payment to a bank branch in Seattle. In finding that the payment at the Seattle branch did not constitute effective tender of payment under the UCC, the court held:

10

> Tender of payment on a note must be made at the place of payment to be effective . . . . The place of payment of a promissory note is the place stated in the instrument . . . . A separate branch or office of a bank is a different bank for the purpose of *place of payment* . . . . The [borrowers] simply did not comply.

*Id.* (emphasis in original); *see also Rossi v. Suntrust Mortgage, Inc.*, 2011 WL 6888530 at *4-6 (M.D.Tenn. Dec. 29, 2011) (applying the "place of payment" analysis established in *Whitney*).

Here, the Deed of Trust provides: "Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15." Further, in the Note, Simpkins agreed to "make . . . monthly payments at P.O. Box 79041, Baltimore, MD 21279-0041 or at a different place if required by the Note Holder." The amended complaint states that Simpkins attempted to tender payment at SunTrust Bank, not to SunTrust Mortgage at the address designated in the Note. Because plaintiff tendered payment to the wrong entity at the wrong place, the court finds that the amended complaint fails to state any facts showing that defendants breached the provisions of the Deed of Trust or the Note.

Next, the amended complaint asserts claims against SunTrust for breach of contract and breach of an oral agreement based on SunTrust's purported "oral" agreement to allow Simpkins to bring his loan current through a payment of $13,745.00. Defendants

11

contend that the Tennessee Statute of Frauds bars Simpkins' claims for breach of contract

and breach of an oral agreement.  The Tennessee Statute of Frauds provides:

> (b)(1) No action shall be brought against a lender or creditor
> upon any promise or commitment to lend money or to extend
> credit, or upon any promise or commitment to alter, amend,
> renew, extend or otherwise modify or supplement any written
> promise, agreement or commitment to lend money or extend
> credit, unless the promise or agreement, upon which such
> action shall be brought, or some memorandum or note thereof,
> shall be in writing and signed by the lender or creditor, or some
> other person lawfully authorized by such lender or creditor.

Tenn. Code Ann. § 29-2-101(b)(1).


Here, Simpkins' breach of contract and breach of oral agreement claims are

based upon a purported agreement by SunTrust to alter or amend the payment terms of

the Note and Deed of Trust.  As such, the Tennessee Statute of Frauds requires that such

an agreement be in writing.  Since Simpkins alleges that this agreement was based upon

an oral representation by SunTrust, the amended complaint fails to state a claim for breach

of contract or breach of an oral agreement.  Accordingly, the claims for breach of contract

and breach of an oral agreement are **DISMISSED.**


## VI.  Misrepresentation

In his response to the defendants' motion to dismiss, Simpkins asserts claims

for both negligent and intentional misrepresentation based on his contact with a SunTrust

Loss Mitigation Department representative, whose name he can recall as being "Mike", that

a deposit of $13,745.72 would bring his loan current and halt the foreclosure proceedings.

To succeed on a claim for negligent misrepresentation, Simpkins must show:

> (1) the defendants were acting in the course of their business, profession or employment; (2) they supplied false information for the guidance of others; (3) they failed to exercise reasonable care in obtaining or communicating that information; (4) the plaintiff justifiably relied on the information; and (5) the plaintiff suffered damages as a result.

*Glanton v. Bob Parks Realty*, 2005 WL 1021559 at *8 (Tenn.Ct.App. 2005) (citing Restatement (Second) of Torts, § 522 (1977)); *Robinson v. Omer,* 952 S.W.2d 423, 427 (Tenn. 1997).

To succeed on a claim for "intentional or fraudulent" misrepresentation, Simpkins must show:

> (1) defendants made a representation regarding a present or past fact; (2) the representation was false; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or recklessly; (5) plaintiff actually relied on the misrepresentation of the material fact; (6) such reliance was reasonable under the circumstances; and (7) plaintiff suffered damages as a result of such reliance.

*Edwards v. Bruce*, 1996 WL 383294 at *8 (Tenn.Ct.App. 1996) (citing *Metropolitan Gov't of Nashville v. McKinney* 852 S.W.2d 233, 237 (Tenn.Ct.App. 1992)).

Accepting Simpkins' allegations as true, that he was instructed by a representative at the SunTrust Loss Mitigation Department that a deposit of $13,745.72 would bring his loan current and halt the foreclosure proceedings, the complaint shows that Simpkins tendered payment to the wrong entity at the wrong location. The Deed of Trust provides: "Payments are deemed received by Lender when received at the location

13

designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15." Further, in the Note, Simpkins agreed to "make . . . monthly payments at P.O. Box 79041, Baltimore, MD 21279-0041 or at a different place if required by the Note Holder." Simpkins attempted to tender payment to SunTrust Bank, not to SunTrust Mortgage at the address designated by the Note. Thus, the amended complaint fails to allege facts tending to show that Simpkins reasonably relied on any purported misrepresentation by an employee of the SunTrust Loss Mitigation Department. In fact, the court has already found with respect to plaintiff's breach of contract claims, that Simpkins has failed to allege a set of facts from which it could be inferred that he reasonably relied on any purported misrepresentation. Accordingly, the claims for negligent/intentional misrepresentation are **DISMISSED.**

### VII.  Tennessee Consumer Protection Act

In the amended complaint, Simpkins alleges that defendants violated the Tennessee Consumer Protection Act (TCPA). However, this court and others applying Tennessee law have held that the TCPA does not provide a cause of action for the conduct of a foreclosure. *See Gibson v. Mortgage Elec. Registration Sys. Inc.*, 2011 WL 3608538 (W.D.Tenn. Aug 16, 2011); *Simms v. CIT Group Consumer Fin.,* 2009 WL 973011 (W.D.Tenn. 2009); *Hunter v. Washington Mut. Bank*, 2008 WL 4306604 (E.D.Tenn. 2008); *Schmidt v. Nat'l City Corp.,* 2008 WL 5248706 (E.D.Tenn. 2008). Accordingly, the claim for violation of the Tennessee Consumer Protection Act is **DISMISSED.**

## VIII.  Conclusion

Plaintiff's motion to amend his complaint [Doc. 14] is **GRANTED.**

Defendants' motion to dismiss [Doc. 4] is **GRANTED, whereby plaintiff's**

**amended complaint is DISMISSED in its entirety.**


**ENTER:**


<u>        s/ Thomas W. Phillips        </u>
United States District Judge